### YOUNGSTOWN SHEET & TUBE CO. v. UNITED STATES.

No. M-343.

Court of Claims.

June 4, 1934.

Charles F. Fawsett, of Milwaukee, Wis. (J. C. Argetsinger, of Youngstown, Ohio, on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

This is a suit for an admitted overpayment of income tax for 1922, and the question involved is whether a timely and sufficient claim was filed under which recovery may be had. The facts are not in dispute.

Plaintiff duly filed its return for 1922 and paid the tax shown due thereon in installments; the last installment of $100,000 being paid December 14, 1923. Within the four-year statutory period for filing claims for refund after the aforementioned payment, namely, November 3, 1926, plaintiff filed a formal claim for refund for 1922 on form 843 for $20,417.82, "or such greater amount as is legally refundable." Specific grounds were assigned as a basis for the claim, and those grounds were sufficient only to justify an allowance of a refund of the amount named of $20,417.82. Before any action was taken on the claim for refund, the Commissioner made an audit of the 1922 return, and on March 30, 1928, notified plaintiff of his determination of a deficiency for that year of $261,052.50. On May 25, 1928, plaintiff filed an appeal with the Board of Tax Appeals from such determination. While the appeal was pending before the Board, further consideration was given by the Commissioner to plaintiff's tax liability for 1922, and a stipulation was entered into for the settlement of the case without trial before the Board. Pursuant to the stipulation, April 9, 1929, the Board entered an order that plaintiff had overpaid its tax for 1922 in the amount of $74,293.51.

Of the overpayment determined as indicated above, $20,417.82 resulted from the affirmation of the contentions for reductions in income set out in plaintiff's claim for refund filed November 3, 1926, and the balance, $53,875.69, from reductions in income which were not raised in that claim. Before the Commissioner made any allowance on account of the overpayment, plaintiff, on June 15, 1929 (after a previous tender of filing on or about April 15, 1929), filed a claim for refund for the entire amount of $74,293.51, which included as a basis therefor not only the grounds set out in the claim filed November 3, 1926, but also the additional grounds set out as a basis for the stipulation under which the final order of determination was entered by the Board. On September 12, 1929, the Commissioner allowed a refund for the specific amount set out in the original claim, $20,417.82, and at the same time or shortly thereafter notified plaintiff of his refusal to allow the balance of the overpayment, for the reason that it was barred by the statute

of limitations, since it did not arise out of grounds assigned in the original claim.

Section 507 of the Revenue Act of 1928 (26 USCA § 1065), corresponding to section 284 of the Revenue Act of 1926 (26 USCA § 1065 and note), provides in effect that, if the Board finds that a taxpayer has made an overpayment, a refund can be made only if claim for refund or the petition to the Board was filed within four years of the payment of the tax. The petition to the Board was filed May 25, 1928, which was more than four years from December 14, 1923, the date of the payment of the last installment of the tax, and therefore, if recovery is to be had, it must be on account of the filing of a claim for refund. As set out above, a claim for refund was filed November 3, 1926, which was within the requisite four-year period, but the parties differ as to the effect to be given to that claim.

Admittedly, the claim of November 3, 1926, did not assign grounds sufficient to permit recovery of more than that which the Commissioner has allowed, but plaintiff insists that the claim filed June 15, 1929, was an amendment or amplification of the original claim, and therefore the entire overpayment could be allowed thereunder. Defendant insists in the first place that the second claim could not be an amendment to the first claim, for the reason that at the time the second claim was filed the first claim had been rejected by the issuance of the deficiency letter of March 30, 1928, and therefore there was nothing remaining which could be amended. It is, of course, true that a claim which has been rejected and therefore is not in existence as a claim before the Commissioner cannot be amended (Sugar Land Ry. Co. v. United States, 48 F.(2d) 973, 71 Ct. Cl. 628), but it is also true that, even after a claim has been rejected, it may be reconsidered by the Commissioner within the time when suit might have been brought by the taxpayer on account of the rejection. Wm. E. Jones et al. v. United States (Ct. Cl.) 5 F. Supp. 146, decided December 4, 1933. We do not, therefore, consider it necessary to determine whether the deficiency notice of March 30, 1928, which determined a deficiency rather than an overpayment, but made no reference to action on the claim, in effect constituted a rejection of the claim; suffice it to say that, even if such letter should be considered a rejection of the claim, the Commissioner reconsidered the claim within the two-year period for bringing suit on account of the rejection, and the claim was not finally acted upon by the Commissioner until on or about September 12, 1929, which was some three months after the so-called amended claim was filed. It is clear, therefore, that the claim was properly before the Commissioner at the time the purported amended claim was filed.

[2] This brings us to the crux of the case: May a claim which assigns a specific ground for recovery (here deductions from gross income) be amended or supplemented, after the statute has run for filing a new claim, but before the Commissioner has finally acted on the original claim, in order to permit a taxpayer to claim additional deductions and thereby secure a greater refund than would have been permitted on account of the specific ground assigned in the original claim? In a group of three cases decided by the Supreme Court January 9, 1933, the course to be followed is pointed out. In one (United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619), it was held that a timely indefinite and general claim, defective under the Commissioner's regulations on both grounds, could be amended before rejection by the Commissioner, even though such amendments were made after the statute of limitations had run for filing a new claim for refund, and in another (United States v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633) the same rule was held applicable to a timely general claim which challenged the correctness of the tax but assigned no specific basis for recovery. In the other case decided at that time (United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 285, 77 L. Ed. 626), an amendment of a timely claim for refund on a certain ground for special assessment was not permitted after the statute had run in order to allow recovery on a statutory basis, but the court set out in the most meticulous manner why such an amendment could not be permitted, whereas a general or indefinite claim could be amended. As heretofore stated, the timely claim involved in the Prentiss Case asked for a refund on a certain ground for special assessment, and the court pointed out that as an incident to such consideration it was necessary for the taxpayer to acquiesce in the Commissioner's determination of income and invested capital. After the Commissioner had made a tentative rejection of the claim in the Prentiss Case on the ground that special assessment was not applicable and after the statute had run on filing a new claim, the taxpayer sought to obtain the refund on the statutory grounds which he was required to abandon when he sought special assessment. The court held

that the bases of the claims were so diverse, so unrelated, and differed so essentially, that the second claim could not be considered an. amendment to the first.

An entirely different situation prevails in the case at bar from that involved in the Prentiss Case. Here the claim at the outset was on statutory grounds, and the revised claim merely added other statutory grounds; that is, in the original claim deductions were sought from gross income and the second claim sought additional deductions. In commenting on the reason for not allowing an amendment in the Prentiss Case, the court stated that: "The presentation of such a claim [that is such a claim for special assessment], unlike the presentation of a claim of error in fact or law, does not suggest the need for a new and general audit of assets and liabilities," and further that: "He [the Commissioner] will conceive [in considering such a special assessment claim] of the invested capital as deposited in a separate compartment which there is no need for him to open." But, in the instant case, the issue presented in the original claim was an error of fact or law or both, and not only did suggest, but resulted in, a new audit of the entire case. As a result, a deficiency was determined, but, after an appeal to the Board of Tax Appeals, the Commissioner reconsidered the entire case and entered into a stipulation, showing an admitted overpayment not only of the amount covered by the original claim but also the amount here in controversy. In order to dispose of the original timely claim, there was a second complete audit of the case on a statutory basis, and the Commissioner in no sense resorted to a "compartment" which he would otherwise consider closed. There was no change from anything which was otherwise regarded as final or closed, nor an appeal to discretionary authority as opposed to the normal audit on a statutory basis.

It is true that the revised or amended claim was not submitted until after the admitted overpayment was determined, but it was submitted some months before final action was taken on the original claim in September, 1929. In the period from April, 1929, when the stipulation was entered into, until September, 1929, when final action was taken, plaintiff first offered in April, 1929, which was prior to the effective date of Treasury Decision 4265, to file the revised claim, and on June 15, 1929, did file such a claim.

We think that constituted a compliance with the Commissioner's regulation and vested the Commissioner with full authority to allow the claim in its revised form. When final action was taken by the Commissioner on the original claim, he was not only on notice as to all of the grounds on which recovery is now sought, but also gave consideration to and determined an overpayment on these bases.

It is apparent that amplification or amendment of the original timely claim was permissible under the circumstances and in the manner carried out by plaintiff prior to final action by the Commissioner in September, 1929. There is no question that the plaintiff has overpaid its 1922 taxes; that the amount so overpaid should be returned; that a timely formal claim was before the Commissioner; that every item in the amended claim was acted upon and well known to the Commissioner before the amended claim was filed; that the Commissioner was not taken by surprise by the second claim when he took action on both claims; and that all the equities are with the plaintiff. Only by a narrow construction of the right to amend can the plaintiff be debarred from recovery. Such a construction is not justified in the circumstances of this case. Our conclusion is supported, not only by the group of three Supreme Court decisions referred to in detail above, but also by two more recent decisions, Bemis Bros. Bag Co. v. United States, 289 U. S. 28, 53 S. Ct. 454, 77 L. Ed. 1011, and George Moore Ice Cream Co., Inc., v. Rose, 289 U. S. 373, 53 S. Ct. 620, 77 L. Ed. 1265, as well as by the decision of the Circuit Court of Appeals for the Fifth Circuit in United States v. Humble Oil & Refining Co., 69 F. (2d) 214, decided February 14, 1934. The only decision which we find which might be considered opposed to our conclusion is that of Bryant Paper Co. v. Holden (C. C. A.) 63 F.(2d) 370, rehearing denied (C. C. A.) 65 F.(2d) 1012, and certiorari denied, 54 S. Ct. 49, 78 L. Ed. 549, but an examination of the opinion would indicate that the result was apparently reached because of the view of the court that the second claim appeared in the record as an independent demand entirely unrelated to the first claim.

Plaintiff is accordingly entitled to judgment for $53,875.69, with interest from December 14, 1923, the date of payment of the last installment of the tax which included the overpayment. It is so ordered.